PEOPLES SAVINGS BANK OF PORT HURON *v.* POST.

1. DESCENT AND DISTRIBUTION—DEGREE OF KINSHIP.

When the persons who inherit from an intestate are of the same degree of kindred they take equally; otherwise, by right of representation (3 Comp. Laws 1929, § 13440, as amended by Act No. 79, Pub. Acts 1931, § 15726).

2. EXECUTORS AND ADMINISTRATORS—AUTHORIZATION TO SUE.

While probate court which had authorized administrator to make distributions of intestate's estate whereunder payments were made to a bank to which an heir had assigned his share of estate as collateral could not have entered judgment against bank for overpayment made because of mistake of law on part of administrator, where bank was notified by registered mail of petition for recovery thereof, the probate court could authorize the administrator to bring suit, should such authorization be deemed necessary.

3. DESCENT AND DISTRIBUTION—DETERMINATION OF HEIRS—PROBATE COURT.

It is the right and duty of a probate court to determine the heirs of an intestate (3 Comp. Laws 1929, §§ 15750–15754).

4. COURTS—JURISDICTION—PROBATE COURT—INJUNCTION—ADMINISTRATOR'S MISTAKE OF LAW.

The assignee of an heir's share of an intestate's estate, upon learning administrator claims to have made an overpayment to such assignee, may not interfere with the regular and orderly proceedings of the probate court by bringing a chancery suit in another county whereunder administrator was enjoined from taking proceedings for establishing liability on part of such assignee to refund moneys paid by administrator voluntarily by mistake of law.

5. EQUITY—MULTIPLICITY OF SUITS—MISTAKE—PROBATE COURT.

Equity suit in one county to enjoin administrator, appointed by probate court of another county, from taking steps in such probate court to establish plaintiff bank's liability for claimed overpayment of assignor heir's share to it due to administrator's mistake of law may not be maintained in order to prevent a multiplicity of suits where only action threatened was one at law in which plaintiff's assignor might be joined as a codefendant.

Appeal from St. Clair; George (Fred W.), J. Submitted January 7, 1942. (Docket No. 30, Calendar No. 41,822.) Decided March 17, 1942.

Bill by Peoples Savings Bank of Port Huron, a Michigan corporation, against Claude Post, administrator of the estate of Albert Potter, deceased, and Dewey D. Potter to enjoin proceedings in a probate court and for other relief. Decree for plaintiff. Defendant Post appeals. Reversed.

*Watson & Inman,* for plaintiff.

*McArthur & McArthur,* for defendant Post.

Butzel, J. Claude Post was appointed the administrator of the estate of Albert Potter, who died intestate and whose estate was in the process of being probated in Ingham county. The petition for probate is not shown in the record. In a subsequent petition for determination of heirs, et cetera, it would appear the estate consisted of $22,000 in real estate and $20,000 of personal property; that Albert Potter left no widow, children, brothers or sisters surviving him, but there were 14 nephews and nieces as follows: three children of Nancy M. Curry, a deceased sister; three of Mary Chase, a deceased sister; seven of Dorcas Holmes, a deceased sister; and defendant Dewey D. Potter, the only child of Curtis Potter, a deceased brother.

It appears that Dewey D. Potter was engaged in the radio business in Port Huron and owed $1,347.11 to plaintiff bank on direct and indirect obligations. The credit was extended by an employee of the bank without proper sanction. The bank, upon learning of the loans, on July 2, 1938, obtained from him as collateral an assignment of any and all money due or to become due him from Albert Potter, deceased.

The bank sent the assignment to the administrator of the Potter estate and he acknowledged its receipt. On October 3, 1938, he obtained an order from the probate court of Ingham county authorizing distribution of the sum of $10,500 to the heirs. The administrator sent the sum of $2,625, one fourth of the $10,500 distributed, to plaintiff, as assignee of Dewey D. Potter. Plaintiff applied $1,347.11 of this amount to pay Potter's indebtedness and turned over to him the balance of $1,277.89, the assignment being retained as security for further loans. On December 19, 1938, the administrator obtained a similar order of distribution for a total of $4,200 and sent the bank as assignee of Dewey D. Potter $1,050, one fourth of the amount distributed as his share. Of this latter amount, the bank applied $318 towards the indebtedness and turned over the balance of $732 to Potter. The inventory of the estate clearly indicated that there would be enough on the final distribution to pay Dewey's indebtedness if, as the administrator indicated, Dewey were entitled to one fourth of the estate. In making these distributions, the administrator, after consulting with the register of probate, assumed that said Dewey D. Potter would inherit by representation one fourth of the estate. Evidently the register of probate and the administrator at the time erroneously believed that the children of deceased brothers and sisters, where there was no surviving brother or sister, would inherit *per stirpes* and not *per capita*. The law provides that if such persons are in the same degree of kindred, they shall take equally, otherwise they shall take by right of representation. 3 Comp. Laws 1929, § 13440, as amended by Act No. 79, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 13440, Stat. Ann. § 26.981); 3 Comp. Laws 1929, § 15726 (Stat. Ann. § 27.2891). When both of the former distributions

were made by the administrator, orders had been entered by the probate court in accordance with the petitions filed that the amounts be distributed "to the several heirs of the estate according to their several interests thereto." It was not until after these distributions and after the bank had made the loans and applied the proceeds from the distributions that the mistake was discovered.

In a petition filed in the probate court some time later, the administrator asked for the determination of heirs and alleged that the administrator had turned over to the plaintiff bank one fourth of the estate instead of one fourteenth, and that the bank had thus received an overpayment of $2,625. The petition asked that the court adjudicate and determine that the overpayment in this amount had been made, and that, if the overpayment be not returned to the administrator, he be empowered to recover such amount by appropriate action. Overpayments had also been made to some of the other heirs because of the same mistake of law and similar authority was also sought to recover these amounts if not voluntarily returned. Notice of the petition was sent by registered mail to the plaintiff bank which thereupon filed a bill of complaint in the instant case in the St. Clair county circuit court in chancery. A decree was rendered permanently restraining the administrator from taking any proceedings in the probate court for Ingham county for the purpose of establishing any liability on the part of the bank for the refund of any moneys paid by the administrator to the bank. It further provided that the overpayments to the bank had been voluntarily made by mistake of law of the administrator and that the bank was not indebted to him or the estate in any amount whatsoever. Defendant administrator appeals. He claims the circuit court had no jurisdic-

tion in the premises. Other grounds of appeal need not be considered.

An analysis of the case indicates that the bank sought a declaration of rights by means of an equity suit, the sole purpose being to prevent by injunction a plain action at law arising out of events that have already taken place and not calling for any intervention of an equity court. The declaration of rights sought was not to determine what parties might do in the future, but to prevent the probate court of Ingham county from conducting its own proceedings in an orderly manner and also to enjoin the administrator from bringing suit for what he might claim he was entitled to recover. While it is true that the probate court for the county of Ingham could not have entered a judgment against the bank, it could, however, authorize the administrator to bring the suit, if such authorization were deemed necessary. It was the right and duty of the probate court to determine the heirs.* The bank had no right to interfere with the regular and orderly proceedings of the probate court. We believe the case is governed by the case of *Wolverine Mutual Motor Ins. Co.* v. *Clark,* 277 Mich. 633, wherein we said:

"Is plaintiff in the proper forum? It is plain from the whole statute that the remedy must be sought in the appropriate court and 'the nature of the case,' not the pleasure of petitioner, is the test of the forum. It would require clear language to support a holding that the legislature intended so unjust a proceeding as that a party, having a purely legal right of action or defense, may bring a proceeding for declaratory judgment in chancery, at his will, serve process anywhere in the State, and deprive a defendant of his right of trial in his own locality and by a jury of his vicinage. If any doubt

---

* See 3 Comp. Laws 1929, §§ 15750–15754 (Stat. Ann. §§ 27.2915–27.2919).—REPORTER.

exists as to the construction of the statute (and I have none), such practice should be condemned or at least vigorously discouraged under the discretionary power of the court. * * *

"We hold that plaintiff may not maintain the proceeding in equity because its claim is legal, that the proceeding will not lie in either law or equity because plaintiff has an adequate remedy of defense in the regular law actions to which it may be subjected, and because no final judgment may be rendered."

The attorney for the appellant on oral argument was asked whether the probate court of Ingham county had the right to enter a judgment or order definitely determining the amount due from plaintiff and he conceded that such right would not be asserted. Plaintiff insists that the equity action was proper in order to prevent a multiplicity of suits. There was a single law suit about to be begun by the administrator against the bank. Possibly Dewey D. Potter might have been joined as a codefendant. There was no multiplicity of suits even threatened. The equity decree might have caused other suits to be begun against the other heirs who had been overpaid and who, as stated in the petition for probate, would probably make adjustments for the overpayments but might not do so without suit because of the decree in the instant case. We need not discuss other questions. The circuit court had no jurisdiction in the premises.

The decree is reversed and one may be entered dismissing the bill of complaint, with costs of both courts to appellant.

Chandler, C. J., and Boyles, North, Starr, Bushnell, and Sharpe, JJ., concurred. Wiest, J., did not sit.