PERIN *v.* PEULER.
ON REHEARING.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ISSUE OF LAW NOT RAISED BELOW—BRIEFS.

An issue of law, not raised in the trial court, may be determined by the Supreme Court, provided such issue has been adequately presented and briefed.

2. SAME—QUESTIONS REVIEWABLE—NEGLIGENT ENTRUSTMENT OF AUTOMOBILE.

Issue as to whether owner of automobile, liable as owner for its negligent operation by virtue of statute, is also liable for negligent entrustment of the car to the driver, is considered, where it is adequately presented and briefed although not raised in trial court, and determination may quiet fears that a new right of action had arisen and assist in the effort to prevent traffic carnage (CLS 1961, § 257.401).

3. AUTOMOBILES—NEGLIGENT ENTRUSTMENT—LIABILITY OF OWNER OR LENDER.

The common-law duty of the owner or lender of a motor vehicle to refrain from placing it in the hands of a known unfit or incompetent driver for operation on the public highways is

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  5 Am Jur 2d, Appeal and Error §§ 545, 566.
[3–6, 10]  8 Am Jur 2d, Automobiles and Highway Traffic § 573.
  Common-law liability based on entrusting automobile to incompetent, reckless or unlicensed driver. 168 ALR 1364.
[7, 8]  14 Am Jur, Courts § 150 *et seq.*
[9]  58 Am Jur, Witnesses §§ 623–627, 670.
[11]  41 Am Jur, Pleading § 288 *et seq.*
[12]  5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

not impaired by the statute imposing liability upon the owner for its negligent operation (CLS 1961, § 257.401).

4. Negligence—Common Law—Liability for Letting Inexperienced Person Use Chattel.

An owner or lender of a chattel, such as a motor vehicle, may not entrust it to an incompetent or inexperienced person without, at common law, incurring liability for resulting negligent injuries to others, the owner's or lender's liability then arising from his negligence in permitting its use by an incompetent or inexperienced person with knowledge of the probable consequences.

5. Same—Proximate Cause.

There can be no recovery for an injury that is not a proximate consequence of the negligence complained of.

6. Automobiles—Negligent Entrustment—Burden of Proof.

The burden is on plaintiff, seeking to recover from negligent entrustor, to prove that motor vehicle which caused injuries and driven by one not the owner, was driven with the permission and authority of the owner or lender, that the entrustee was in fact an incompetent driver, and that the owner or lender knew at the time of the entrustment that the entrustee was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner or lender of such incompetency, and plaintiff must also show causal connection between the entrustment and the injury of which he complains.

7. Constitutional Law—Courts—Rules of Practice and Procedure.

The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to the Supreme Court, a function with which the legislature may not interfere or meddle save as the Court may acquiesce and adopt for retention at judicial will (Const 1908, art 7, § 5; Const 1963, art 6, § 5; GCR 1963, 16).

8. Same—Courts—Rules of Evidence.

The judicial function constitutionally empowers the courts to make their own rules of procedure, including rules of evidence, subject only to specific constitutional limitations (Const 1908, art 7, § 5; Const 1963, art 6, § 5; GCR 1963, 16).

9. Witnesses—Admission of Crime—Explanation—Discretion of Court.

A witness or party under cross-examination who admits to conviction of a crime or crimes is permitted to offer to the jury

his explanation, for if there are extenuating circumstances no one else can so readily recall them, the trial judge being lodged with discretion to confine inquiry on such collateral matters to the admissions and the explanation by the witness, the explanation being subject to cross-examination within trial judge's discretion.

10. AUTOMOBILES—NEGLIGENT ENTRUSTMENT—EVIDENCE.
   A case of negligent entrustment of an automobile is not confined to proof of convictions for violation of motor traffic laws and owner-lender knowledge thereof, but where plaintiff's pleading lacks clarity in such respect, the defendant may be entitled to more certain pleading of that which plaintiff intends to prove.

11. SAME—NEGLIGENT ENTRUSTMENT—AMENDMENT OF DECLARATION.
   It was reversible error on part of trial judge to deny plaintiff's motion to amend declaration after pretrial but before trial in automobile accident case so as to embrace as an additional basis of negligence on part of defendant owner that he entrusted his car to his son although knowing that the son' was an unfit person to drive the car.

12. COSTS—REHEARING.
   Costs on rehearing in personal injury case that are granted plaintiff appellant are limited to those costs as they stood taxable upon first decision by the Supreme Court, where original determination by Supreme Court is affirmed.

DETHMERS and KELLY, JJ., dissenting.
O'HARA, J., dissenting in part.

Appeal from Kent; Hoffius (Stuart), J. Submitted on rehearing July 17, 1963. (Calendar No. 31.) Resubmitted on rehearing April 9, 1964. (Calendar No. 24, Docket No. 49,783.) Decided on rehearing September 2, 1964.

Case by Florenda Perin against Henry Peuler, Sr., and Henry J. Peuler for personal injuries suffered in automobile collision October 4, 1959. Motion to amend declaration to incorporate charge of actionable negligence against owner of automobile denied. Plaintiff appeals. Reversed. Rehearing granted and cause resubmitted. Prior decision upheld and cause reversed and remanded.

*Mitts, Smith & Haughey* (*Sherman H. Cone,* of counsel), for plaintiff.

*Cholette, Perkins & Buchanan* (*Grant J. Gruel,* of counsel), for defendants.

### ON REHEARING

BLACK, J. This case (Docket No. 49,783), having been ordered reheard, was resubmitted July 17, 1963 and again on April 9, 1964, together with the like case of *Tortora* v. *General Motors Corporation* (Docket No. 49,435). In the main *Tortora* has presented the same questions as have been briefed and argued to the Court on rehearing of the instant case. *Tortora,* fully tried to court and jury as that case was, should be read and considered with what is to follow. See opinions of the *Tortora Case,* 373 Mich 563.

Our previous disagreement (*Perin* v. *Peuler,* 369 Mich 242, 247) gave birth to a new issue defendants' counsel would have us decide on rehearing. That issue, headed "Statement of Additional Question Involved," is submitted this way:

"There is no liability for negligent entrustment of an automobile by an owner whose liability is purely statutory under the provisions of the civil liability act, CLS 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101)."

While the quoted issue—not having been raised below—is not properly here, the signers of this opinion are agreed that the Court should decide it, the better to quiet the fears of contemporary Cassandras that a new right of action may have been born out of legal wedlock when the majority opinions of *Elliott* v. *A. J. Smith Contracting Co.,* 358 Mich 398, and *Perin* v. *Peuler, supra,* were handed down.

That we may in apt circumstances determine a new legal issue, provided such issue has been adequately

presented and briefed, was settled again when *Dation v. Ford Motor Co.,* 314 Mich 152 (19 NCCA NS 158) came to unanimous decision. See cases cited therein at 159. And a firm determination of the quoted issue should bring a measure of overdue aid, not only to an understandably perplexed profession but also to Michigan's beset and dismally failing effort to prevent traffic carnage. It may, at very least, awaken some overindulgent parent to the fact that, from the beginning in instances disclosed as at bar, his personal, distinguished from vicarious, toes have been exposed to the heavy boot-step of liability whether he is owner or lender of the motor car that known-to-be unfit son or daughter has driven to the causally actionable injury of another. We proceed accordingly.

The undersigned hold, on rehearing:

1. That the common-law duty of the owner or lender of a motor vehicle to refrain from placing it in the hands of a known unfit or incompetent driver for operation on our public highways, stands unimpaired by Michigan's 55-year-old owner-liability statute (PA 1909, No 318, § 10, subd 3, p 780; see, currently, CLS 1961, § 257.401; Stat Ann 1960 Rev § 9.2101). When and if the legislature decides to eliminate the common-law right of action which arises from negligent entrustment of a motor car, doubtless it will say so by reasonably explicit enactment. That body has not done so, as yet, as herein cited *Tanis, Elliott,* and *Haring* plainly tell us.

When this Court—in 1933—unequivocally applied such common-law rule to a motor car lender (*Tanis v. Eding,* 265 Mich 94); a full quarter century *after* Michigan's owner-liability statute had become effective, it necessarily came to the same conclusion as did the Iowa supreme court some years later in *Krausnick v. Haegg Roofing Co.,* 236 Iowa 985, 989 (20 NW2d 432, 434, 435, 163 ALR 1413, 1417). *Krausnick* is cited in direct support of the new text of

8 Am Jur 2d, Automobiles and Highway Traffic, § 573, "Effect of entrusting vehicle to incompetent or reckless driver," pp 125, 127:

"Even though in some States statutes have been enacted which have the general effect of making the owner of a motor vehicle liable for injuries negligently inflicted as a result of the use or operation of such vehicle by persons other than the owner himself, if the operation of the vehicle was within the scope of the owner's consent, *the common-law liability for entrusting the operation of one's motor vehicle to a known incompetent driver is not superseded thereby.*" (Italics by present writer.)[1]

We adopt such text and hold that the quoted new issue should be answered in the negative.

2. That this Court should, on rehearing, definitely reaffirm its adherence to the rule adopted in *Tanis, supra,* quoted as follows (*Tanis* at 96, 97):

"The precise question is new in this State. The overwhelming weight of authority supports the following:

" 'The general rule that an owner of an automobile is not liable for the negligence of one to whom the automobile is loaned has no application in cases where the owner lends the automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, and likely to cause injuries to others in the use of the automobile; in such cases the owner is held liable for injuries caused by the borrower's negligence on the ground of his personal negligence in entrusting the automobile to a person who he knows is apt to cause injuries to another in its use.' 36 ALR 1148."[2]

There is nothing startling about this rule of personal liability, whether the entrusting person is

---

[1] The text finds full support also in *McCalla* v. *Grosse,* 42 Cal App 2d 546 (109 P2d 358).

[2] For elaboration of this rule, see annotation 168 ALR 1364, "Common-law liability based on entrusting automobile to incompetent, reckless, or unlicensed driver."

"owner" of the entrusted chattel or not. This Court reaffirmed it, carefully and unanimously no more than 18 months ago, in *Haring* v. *Myrick,* 368 Mich 420, 424, 425. On that occasion the Court applied, *to a case where the defendant automobile owner was charged with negligent entrustment,* Restatement's pertinent common law text (*Haring* at 426). To make this perfectly plain, there is presented below what 7 presently seated Justices then attested, without reservation (p 423):

"There is another circumstance, however, where liability at common law is imposed upon the owner of a chattel for injuries resulting from its negligent use by another. Such liability arises when the owner permits an incompetent or inexperienced person to use his chattel with knowledge that such use is likely to cause injuries to others. Apart from such statutes as that cited above, the owner of a motor vehicle may not entrust it to such a person without liability for resulting negligent injuries to others. 36 ALR 1137, 1148; *Naudzius* v. *Lahr,* 253 Mich 216, 229 (74 ALR 1189, 30 NCCA 179); *Tanis* v. *Eding,* 265 Mich 94, 96; and *Elliott* v. *A. J. Smith Contracting Co.,* 358 Mich 398, 414. In such circumstances, the owner's liability is also in part vicarious for it cannot arise unless the person entrusted with the automobile uses it negligently; but, the primary basis for the owner's liability is said to be his own negligence in permitting its use by an incompetent or inexperienced person with knowledge of the probable consequences."

Before proceeding to divisions 3 and 4, *infra,* some additional comment upon *Tanis'* rule is in order.

First we note that *Tanis'* adoption thereof was in the setting of a case where the defendant lender—a car dealer—was not, technically at the time of Sophie Tanis' injury, "owner" of the car Vredeveld had turned in to him on an otherwise completed car deal. Nonetheless this Court applied what it said was a rule supported by "the overwhelming weight of au-

thority"; a rule which applies to mere lenders as well as to owner-lenders. Thus the plaintiff in negligence may rely upon the owner-liability statute to hold the owner responsive for negligent operation of the latter's motor vehicle by another, and at the same time rely upon the quoted rule to hold the owner responsive for personal negligence arising out of negligent entrustment of such motor vehicle; provided, of course, such statutorily imputed negligence and such personal negligence are causally connected with the plaintiff's injury. Such reasoning merely pursues *Elliott, supra,* at 411:

"What has been said here? Simply that plaintiff has 2 theories for defendant's liability: (1) defendant's alleged negligence in entrusting a motor vehicle to an employee unfit to be at the wheel, and (2) defendant's vicarious liability for the negligence of an employee acting within the scope of his employment. These are 2 perfectly valid theories."

For an instance where precedent conduct of an entrustee of a motor car, if that conduct was known to the entrusting owner at the time of or during continuation of the entrustment, may—if causally connected—make a jury question of personally actionable negligence on the part of such entrusting owner, consider the *Tortora Case, supra.*

Second, the entrustment rule definitely requires proof of knowledge (or of facts giving rise to an inference of knowledge), on the part of the owner or lender, of the unfitness or incompetence of the entrusted driver. The plaintiff must, perforce, prove the essentials of what by his allegation has become his burden. As the supreme court of Ohio concluded, in the factually like case of *Gulla* v. *Straus,* 154 Ohio St 193, 201 (93 NE2d 662, 666):

"In a case such as the instant one, the burden is upon the plaintiff to establish that the motor vehicle

was driven with the permission and authority of the owner; that the entrustee was in fact an incompetent driver; and that the owner knew at the time of the entrustment that the entrustee was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency."

Third, in addition to the requirement of precedent knowledge (on the part of the entrusting owner or lender) of the unfitness or incompetence of the entrusted driver, the entrustment must be causally connected with the injury of which the plaintiff complains. It could not be sensibly contended, for instance, that the entrusted driver, thus known to be unfit or incompetent, had started any chain of causation back to the entrustor if such entrusted driver, in the operation of the entrusted car, had himself committed no act or omission constituting actionable negligence. He might be wholly unfit to drive, and the fact of knowledge of such unfitness might have been proclaimed the night before by the entrusting owner or lender, yet if on the occasion of the plaintiff's injury such entrustee was not himself causally negligent in the operation of the entrusted car, no right of action in favor of such plaintiff could arise against either the entrustee or entrustor. The element of causal connection between negligent entrustment and injury would be lacking, as much so as if the negligence complained of should be that of permitting the entrustee to drive the entrustor's car without license plates in violation of statute. See, to the point, *Spencer* v. *Phillips & Taylor,* 219 Mich 353.

In all cases such as we consider here the cause of the plaintiff's injury must be proximately connected to some negligent act or omission for which either

the entrustor or the entrustee is legally responsible. Our rule, first announced by the Court in *Lewis* v. *Flint & Pere Marquette R. Co.*, 54 Mich 55 (52 Am Rep 790), is that "There can be no recovery for an injury that is not a proximate consequence of the negligence complained of; the court cannot select some cause back of the proximate one whereon to base an action." (*Minneapolis F. & M. Ins. Co.* v. *Porter*, 328 Mich 11, 18, citing the *Lewis Case*.) All of which may be too elemental for inclusion, yet we insert it to overcome guileful or guileless misunderstanding of the showing a plaintiff—as at bar—must make in order to support a charge such as this plaintiff proposes by way of amendment.

3. That the statute[3] goes too far in limiting submission and reception of what may be and usually is evidence of value in civil cases. Should it be permitted further life, as proscribing *admissible* evidence to *any* extent? We think not, unnecessary controversy and iniquitous injustice in the application thereof having multiplied ever since the statute was thrust, in 1949, into the then pertinently stable rules of evidence (PA 1949, No 300, § 731, p 588).

Not until recent years has this Court paused for reflection upon its constitutional position vis-a-vis the legislative branch (*Love* v. *Wilson*, 346 Mich 327; *Darr* v. *Buckley*, 355 Mich 392) when that branch assumes to enact rules of practice and procedure, which rules include, of course, the rules of evidence. Yet as far back as 1931 the Court took the step (then Court Rule No 1, § 3) which was and remains requisite to constitutional validity of statutory rules of practice that are consistent with current court rules.

---

[3] Section 731 of vehicle code; CLS 1961, § 257.731 (Stat Ann 1960 Rev § 9.2431), quoted *post*. "Conviction," as employed in section 731, means, of course, conviction by a court ·charged with the duty of hearing and determining complaints for violation of the motor vehicle code or of local ordinances "pertaining to the use of motor vehicles."

The adoptive rule (refer to *Love* and *Darr, supra*) read, in 1931:

"Sec. 3.   Rules of practice heretofore set forth in any statute, not in conflict with any of these rules, shall be deemed to be in effect until superseded by rules adopted by the Supreme Court."

It reads now (GCR 1963, 16):

"Rules of practice set forth in any statute, not in conflict with any of these rules, shall be deemed to be in effect until superseded by rules adopted by the Supreme Court."

If it were not for protective and adoptive Rule 16, said section 731[4] would be vulnerable to constitutional attack upon the same grounds as were brought up in *Harker* v. *Bushouse,* 254 Mich 187 at 192.   The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will.   This last the Court has done with respect to said section 731.   Now, this and like cases having arisen with respect to said section 731, we of the Court are overdue for a hard look at that section. Preliminary to that look, we advert to what was said above—that the rules of practice and procedure include the rules of evidence:

"The judicial function constitutionally empowers *the courts to make their own rules of procedure,* including rules of evidence (subject only to specific constitutional limitations).   Virtually all of the original rules of evidence were invented by the courts.

---

[4] "Sec. 731.   No evidence of the conviction of any person for any violation of this chapter or of a local ordinance pertaining to the use of motor vehicles shall be admissible in any court in any civil action."   CLS 1961, § 257.731 (Stat Ann 1960 Rev § 9.2431).

But as the courts usually failed to change rules which proved undesirable, the legislature from time to time made reformatory alterations by statute,—thus obscuring historically the natural function of the courts.

"In recent times, the just prerogative of the courts to make their own rules of procedure has been vindicted in professional opinion; and a healthy movement to relegate generally procedure to the courts has long been under way. *That this prerogative. of the courts includes the power to formulate and to alter the rules of evidence ought not to be doubted.*" (1 Wigmore on Evidence [3d ed], § 7, 1962 pkt supp, p 51; adding these quotations to text.)

The italics above are those of the pocket supplement text writer.

Let us consider the literal wording of section 731 and its application to civil actions generally. Its proscription applies to "convicted" witnesses, as well as parties. It tells the courts of this State that they shall not, "in *any* civil action," receive "evidence of the conviction of *any* person for any violation of this chapter or of a local ordinance pertaining to the use of motor vehicles."[5] The section does not—even by implication—limit its prohibition against admissibility to traffic accident civil trials. The trial may be of a damage action for slander or libel, for assault, for negligent use of a firearm or pickax, for fraud and deceit, for actionable invasion of privacy, or the like. The triable issue may arise in an action to set aside a deed, or in a certified will contest. No matter the nature of the "civil action," and no matter the nature of the motor vehicular criminal record of the party or witness on the stand, that party or witness cannot—if section 731 is left to stand—be impeached or tested for credibility upon such criminal record.

---

[5] For a similar legislative mandate and its fate, see *Bielecki* v. *United Trucking Service*, 247 Mich 661.

So if section 731 is to remain effective in bold dictation to the judicial branch, the legislature will have effectively "repealed," in substantial part, one of our oldest and most valuable rules of evidence, exemplified in CL 1948, § 617.63 (Stat Ann § 27.912), now CLS 1961, § 600.2158 (Stat Ann 1962 Rev § 27A.2158); *Van Goosen* v. *Barlum,* 214 Mich 595; *Niedzinski* v. *Coryell,* 215 Mich 498; *Zimmerman* v. *Goldberg,* 277 Mich 134; *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich 528; *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186); *People* v. *Miller,* 235 Mich 340; *People* v. *Finks,* 343 Mich 304 (51 ALR2d 934). The undersigned are not willing to bow further before such dictation and move accordingly to corrective action.[6] The effect of such action, if taken, will of course be *prospective* in nature.

## Summary

We observe now—the case not having been tried —that this plaintiff may be unable to prove her allegation of negligent entrustment; that it may be, when the defendants plead to her amendment, that actual or inferential knowledge by the father of the boy's record as claimed will be denied, making an issue on that score. It may be also that such record will fail to make a submissible case of unfitness or incompetence and owner-lender knowledge thereof.

[6] The bench and bar are respectfully advised that, pursuing GCR 1963, 933, the Court has this day notified the secretary of the State Bar and the court administrator of intent of the Court to consider, with view toward adoption, an amendment of GCR 1963, 507, adding a new provision to be known as GCR 1963, 507.10, reading as follows:

".10 During the trial of civil actions the rules of evidence, including the right of cross-examination for credibility, shall remain in full force and effect, section 731 of the Michigan vehicle code (CLS 1961, § 257.731 [Stat Ann 1960 Rev § 9.2431]) to the contrary notwithstanding. For the right of cross-examination to which this sub-rule refers, see *Van Goosen* v. *Barlum,* 214 Mich 595, 599; *Zimmerman* v. *Goldberg,* 277 Mich 134; *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich 528; *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186); CLS 1961, § 600.2158 (Stat Ann 1962 Rev § 27A.2158)."

As to this last see the suggestion—to avoid possible prejudice—which appears at the conclusion of our opinion of *Tortora, supra.*

On the other hand, and here we consider all fearsome forebodings, if plaintiff succeeds in proving by due preponderance her amendatory allegation, this defendant parent should take stoically the bitters all like parents neglectfully brew for themselves. When father, without personal and constant attention to junior's training for the public as well as personal hazard of motorcar driving, and without like attention to junior's ensuing driving habits, lets the boy continue use of father's car after 1 or more convictions have been adjudged to father's knowledge, and bothers not from that time on to train with due discipline before the inevitable occurs, he and that boy—certainly not the victim of his and the boy's negligence—should bear the "prejudicial" consequences. The common-law rule of negligent entrustment is both time tried and valuable, and we are not disposed to dilute its worth on assigned ground that the sad proof of junior's record of court-conviction and parental knowledge thereof will "prejudice the entrustor and the entrustee before the jury." Provided always the requisite proof is made (refer back to the *Gulla* quotation at 373 Mich p 538), such "prejudice" is due solely to the negligence of those who decry it. That kind of prejudice manufactures no judicial error, reversible or otherwise. And we cannot resist adding that, from *Tanis* in 1933 and at least until enactment in 1949 of said section 731, the courts of Michigan seem in these negligent entrustment cases to have dispensed a fair measure of justice without having created the resultant and widespread prejudice counsel tell us they see ahead.

Arriving at the end of a necessarily lengthy opinion, we consider the foremost point defendants have

made in oral argument. They aver that any opinion of this Court, which even hints that a known history of "previous involvement in accidents" may make out a submissible case of negligent entrustment, will require in 1 suit a complete trial of each of the causes of such previous accidents; also that such consequential result will call down upon our trial courts an impossible burden.

The point is not very impressive. It has always been the law that, when a witness or party under cross-examination admits to conviction of a crime or crimes, he of right is permitted "to offer to the jury his explanation" (*Leland* v. *Kauth*, 47 Mich 508; *Finner* v. *Porath*, 221 Mich 28; *Schudlich* v. *Yankee*, 272 Mich 482; *Socony-Vacuum Oil Co.* v. *Marvin, supra.*) "If there are extenuating circumstances, no one else can so readily recall them." (*Wilbur* v. *Flood,* 16 Mich 40 at 44 [93 Am Dec 203]). And the trial judge, utilizing his well understood vestments of discretion, will usually see that such collateral matters of inquiry are confined to the admission or admissions of conviction by the witness and his explanation thereof, thus to avoid trial of the numerous collateral issues, the distractions of the jury from the main issue or issues on trial, the drawing out to unnecessary length of such trial, and all like frets and woes counsel upon successive oral arguments have presented. The explanation may of course be the subject of proper cross-examination, within the trial judge's discretion.

Plaintiff's motion for leave to amend her declaration, according to and as quoted in *Perin* aforesaid at 247, was denied below. As previously held, such denial constituted reversible error. The circuit court's order should therefore be reversed and the record should be remanded to the Kent circuit for entry of order granting plaintiff's said motion.

Plaintiff should have costs, but only such as stood taxable upon first decision here.

Defendants may, of course, move to strike or for more certain pleading, it having been made to appear that some uncertainty exists with respect to plaintiff's pleading of previous "accidents" rather than previous "convictions." By this we do not mean to say that a submissible case of negligent entrustment of an automobile can be made only by proof of "convictions" for violation of motor traffic laws and owner-lender knowledge thereof. Such a case possibly could be made upon proof of known unfitness arising from other facts and events, such as entrustment to a known-to-be partially blind person, or a visibly intoxicated person, or a known insane person, or a person otherwise known-to-be wholly unfit to drive a car upon our public ways. We do mean that, in the context of this Perin Case, where the plaintiff seems to rely upon a record of conviction[7] yet has not pleaded with specific clarity, the defendants may well be entitled to more certain pleading of that which plaintiff intends to prove under her proposed amendment. See the "necessary reasonably to inform" requirement of GCR 1963, 111.1.

What has been written above, and what has been written for the majority signing in *Tortora, supra,*

---

[7] The "record" upon which plaintiff seemingly proposes to rely is detailed in her brief as follows:

| "CONVICTION DATE | PLACE | ACCIDENT OR ARREST DATE | OFFENSE OR DEPT. ACTION |
|---|---|---|---|
| 1. Acc. Rep. 341023 | Kent County | 10/ 7/56 | 1 vehicle, 2 injured |
| 2. 10/ 9/56 | Grand Rapids | 10/ 7/56 | speeding |
| 3.  9/11/57 | Grand Rapids | 9/ 2/57 | fail to keep right |
| 4. Warning letter 10/ 3/57 | | | |
| 5. 10/28/57 | Zeeland | 10/23/57 | improper passing |
| 6.  1/15/58 | Grand Rapids | 1/13/58 | speeding |
| 7. Suspension | 2/17/58 through 3/16/58 | | habitual negligence |
| 8. 12/20/58 | Hudsonville | 12/14/58 | improper turn |
| 9. Acc. Rep. 287253 | Kent County | 10/ 4/59 | 2 vehicles, 1 injured" |

supersedes and replaces our former decision (*Perin*
v. *Peuler,* 369 Mich 242).

KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS,
JJ., concurred with BLACK, J.

KELLY, J. (*dissenting*). This Court's awareness
of the importance of the question presented and the
decision to be made is evidenced by the unusual
journey this case has taken up to now through our
Court.

July 19, 1961, plaintiff filed her declaration in the
circuit court for the county of Kent against Henry
Peuler, Sr., and his minor son, Henry Peuler, Jr.,
alleging she was was injured when a car in which she
was a passenger collided with a car owned by Peuler,
Sr., and driven by Peuler, Jr. Peuler, Sr., filed an
answer admitting that the car was being driven by
his son with his knowledge and consent.

Pretrial statement was filed October 17, 1961, and
the following December 21st plaintiff sought leave to
amend her declaration by adding the following:

"That a further proximate cause of said collision
was the negligence of defendant Henry Peuler, Sr.,
in permitting defendant Henry J. Peuler to operate
his aforesaid vehicle, when he knew that said Henry
J. Peuler had been guilty of repeated traffic viola-
tions, had been involved in prior accidents, and had,
shortly prior thereto, undergone a temporary sus-
pension of his operator's license for habitual negli-
gence."

In denying plaintiff's motion to amend (January
8, 1962), Judge Stuart Hoffius called attention to the
statute[1] prohibiting introducing the driver's previous
statutory or ordinance convictions in a subsequent
civil action; stated there was no necessity for an

---

[1] CLS 1961, § 257.731 (Stat Ann 1960 Rev § 9.2431).

amendment because defendant-owner by his filed answer admitted his son. drove the car with his knowledge and consent and thereby made himself liable for his son's negligence, and said: "The sole purpose of the proposed amendment is only to bring in the driving record of defendant-driver and thereby influence the jury."

Plaintiff appealed the court's ruling on the grounds that it was contra to our holding in *Elliott* v. *A. J. Smith Contracting Co., Inc.*, 358 Mich 398, and contended that the defendant-driver could be protected from prejudicial harm by a court instruction that the past record of the driver has no bearing upon his negligence in this case and "is to be considered solely in determining whether or not the owner was negligent in entrusting the vehicle to him."

The majority opinion (4 Justices) in our original hearing of this case (*Perin* v. *Peuler*, 369 Mich 242) construed the statute as being directed only to "evidence of the conviction" and declared (p 246) "facts of past occurrences are not barred by the statute," and emphasized this point by stating, "a whole series of past accidents or other events might be shown if they were of such a nature as to lead to the conclusion that the son was unfit to be at the wheel and the father allowed him to drive, having knowledge that this was so." The majority opinion concluded by finding that the court erred in denying plaintiff the right to file the amendment.

The minority opinion (3 Justices) contended that the majority opinion interpreted the statute in an entirely different way than the interpretation given to that statute by the majority in *Elliott;* that the driver would not be protected from prejudice by an instruction of the court; that to allow evidence of accidents defendant-driver was "involved" in would be (p 251) "approving a new type of trial" in auto-

mobile negligence cases "where we call upon a jury to decide in 1 hearing responsibility for 2 or more accidents" that occurred during an extended period of time; that "the legislative mandate, using terms 'any person,' 'any court,' 'any civil action,'" is definite and broad, and that "any change in this mandate should come from the legislature and not by judicial legislation." The dissent concluded that the court did not err in denying the amendment.

Rehearing was granted and oral arguments were heard on July 17, 1963, and, on this Court's own motion, a second rehearing was ordered and the third oral argument in this case was held April 9, 1964.

Since the enactment of the ownership liability statute we have not considered and decided the question of whether negligent entrustment may be employed in a case such as that at bar where plaintiff alleged a defendant-owner is liable under the ownership liability statute and the owner-defendant admits he is liable under the statute for the driver's negligence, if the driver is found negligent.

The negligent entrustment cases cited by Justice BLACK to sustain his contention that the trial court erred in denying the amendment are all clearly distinguishable. His 3 cited cases all presented situations in which the application of the ownership liability statute was being disputed by the defendant-owner. In none of these prior cases did the owner agree in his answer, as does the owner in this case, with the plaintiff's assertion that the owner was within the statute's application. In none, therefore, could the plaintiff rely solely upon the statutory provisions of presumed owner liability.

In *Tanis* v. *Eding*, 265 Mich 94, this Court was reviewing the granting of defendant's motion to dismiss a declaration. Unlike the present case, defendant-owner had not yet answered and had not ad-

mitted that the statute applied to him. In that case defendant Eding operated a sales and service garage and in the course of his business took a car in exchange for a new one, but failed to secure a delivery of certificate of title. He then allowed one Brower to take the car out of the garage and drive it, and, it was alleged, he knew when he gave the car to Brower that Brower was a careless, reckless, and incompetent driver.

In determining Eding's responsibility, this Court held (p 96): "Eding was not liable, under 1 CL 1929, § 4648, as owner of the car, because he had not received certificate of title. *Kimber* v. *Eding,* 262 Mich 670." The Court, however, went on to say that the precise question presented in *Tanis*—liability of a lender of an automobile to one known to be a careless driver, was new to the Court, but the Court would adopt the following from 36 ALR 1148:

" 'The general rule that an owner of an automobile is not liable for the negligence of one to whom the automobile is loaned has no application in cases where the owner lends the automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, and likely to cause injuries to others in the use of the automobile; in such cases the owner is held liable for injuries caused by the borrower's negligence on the ground of his personal negligence in intrusting the automobile to a person who he knows is apt to cause injuries to another in its use.' "

Thus, in *Tanis,* our Court clearly stated that there was not a responsibility under the statute as the Court decided it would attach responsibility under the common-law entrustment theory.

Attention is called to the fact that not more than 18 months ago this Court considered *Haring* v. *Myrick,* 368 Mich 420, and 7 of the presently seated

Justices (the writer of this opinion included), without reservation, attested to the quotation therefrom set forth in Justice BLACK's opinion.

To establish without doubt that our Court in *Haring*, as in *Tanis*, was confronted with facts that did not allow for a recovery for negligence under the ownership liability statute, I quote from the Haring decision, 3 paragraphs from the syllabi:

"Declaration averring that defendant owner had failed to use due care in permitting an unskilled and inexperienced person to use, maintain, operate, and repair his car, and that as a result of negligence in blowing out the gas line plaintiff was sprayed with gasoline which was ignited by a heating appliance defendant's inexperienced son was using, thereby severely burning plaintiff, stated a cause of action at common law against the owner."

"The statute imposing liability upon owner for negligent injuries inflicted by another person as driver of a car does not apply to action for negligent injuries inflicted when the car was not being driven at time fire occurred (CLS 1956, § 257.401 [Stat Ann 1960 Rev § 9.2101])."

"The owner of a chattel who loans it to another who is incompetent or inexperienced is liable for resulting injuries to others whatever the intended use of the chattel so long as the user's competence therefor is inadequate and known to the owner."

In *Haring* v. *Myrick, supra,* this Court again was considering an appeal from a dismissal by the trial court of 2 declarations upon the motion of defendant. Our opinion in that case expressly stated that the opinion and dismissal took place before answer; also, while the ownership liability statute was pleaded by plaintiff, as the syllabi-summary above shows, the facts of the occurrences in question were such that it was quite clear that the statute did not apply. The trial court and this Court held the stat-

ute clearly did not apply and, again, defendant-owner, far from admitting the application of the ownership liability statute, was vigorously (and successfully) attacking it.

Thus, in neither of these cases, did this Court hold what the opinion to which I dissent contends, namely, that common-law negligent entrustment may be pursued where statutory ownership liability applies. While, in both *Tanis* and *Haring,* the Court approved plaintiffs' negligent entrustment theory, the Court had first agreed with the owners' attack that plaintiffs were wrong in pleading statutory liability; therefore, the *Haring* v. *Myrick* and *Tanis* v. *Eding* cases are clearly not authority for the proposition that negligent entrustment may be pleaded and proved where the ownership liability statute clearly applies, and, in fact, is admitted by defendant to apply.

The cited Iowa case[2] is not at war with this analysis. While that case did approve the pleading of the common-law action of negligent entrustment, together with the pleading of liability under the ownership liability statute, the case is not authority for allowing such double pleading in the present case. In the Iowa case the matter was before the Iowa supreme court on interlocutory appeal from defendant's motion to strike the negligent entrustment theory from plaintiff's petition. In the Iowa case, with defendant not having yet admitted or denied whether he fell under the ownership liability statute, and with the Iowa court taking pains to point out that the ownership liability statute does not apply in all situations,[3] it is clear the plaintiff should have

[2] *Krausnick* v. *Haegg Roofing Co.,* 236 Iowa 985, 989 (20 NW2d 432, 434, 435, 163 ALR 1413, 1417).

[3] Owner liability by Iowa statutes is restricted to negligence of a driver when the driver is on a specific trip at the direction and for the owner and if the accident occurs while the driver is using the car for different or unauthorized purposes, then there is no owner liability.

been allowed, as he was, to protect himself by pursuing both the statutory and common-law theory of owner liability, at least until the time of defendant-owner's answer. If the present case had come before this Court in a posture similar to that in which the Iowa case came before that court, we would hold as did the Iowa court. However, the Iowa decision only emphasizes the distinguishing and controlling factor present in the case now before us. In this case there is no need to pursue the common-law negligent entrustment theory and no need for this Court to allow the plaintiff to possibly prejudice the defendants' rights to a fair hearing because, as has been emphasized, the ownership liability part of this case was completed at the termination of pleadings. After all, this is the purpose of pleadings: To remove from trial those issues not disputed. Because of the statute and defendant-owner's admission that he would not be able to escape the statute, plaintiff's only task in this present case is to establish the driver's negligence on the day and in the incident in which plaintiff claims she was injured.

The 1949 legislative enactment, as amended by PA 1953, No 60 (CLS 1961, § 257.731 [Stat Ann 1960 Rev § 9.2431]), providing: "No evidence of the conviction of any person for any violation of this chapter or of a local ordinance pertaining to the use of motor vehicles shall be admissible in any court in any civil action," was not challenged in our Court before 1960 when we were called upon to pass upon the statute in *Elliott* v. *A. J. Smith Contracting Co.*, *supra*, where we not only recognized the legislative right to so provide but gave this Court's reasons for the propriety of such a provision, as follows (p 413):

"The principal evils sought to be cured by the statute arise in this way: A driver has been convicted of a criminal offense in connection with a traffic

accident. In addition, he is sued civilly with respect to the same accident. There is a danger that the civil jury might, if permitted, consider the criminal conviction as evidence of negligence in the civil action, or, in civil cases, that negligence in a prior case will be regarded as evidence of negligence in a later case. These, principally, are what the statute seeks to prevent. 3 Wigmore, Evidence (3d ed), § 987."

Our February, 1963, attempt to determine this present appeal in *Perin* v. *Peuler,* 369 Mich 242, did not repudiate our 1960 *Elliott* above-quoted statement and did not challenge the statutory provision, but construed it as only prohibiting proof of conviction.

Now, in this rehearing, it is recommended for the first time that this provision should not "be permitted further life."

The clear terms of the statute are discussed in the writer's dissents in *Elliott* and in the first *Perin* v. *Peuler* decision. Both opinions are hereby reaffirmed. As to the recently advanced thought that the statute is also "void," the writer submits that this extreme argument fails in and by its own statement.

Evidence of acts or incidents to establish a character or disposition of negligence is almost unanimously held to be improper by courts and evidence law commentators, and to show that the provisions of the statute in question are not contra to prevailing law, I cite the following:

20 ALR2d 1210, under annotation "Admissibility, in civil motor vehicle accident case, of evidence that driver was or was not involved in previous accidents":

"General rule.
"It is generally held that evidence of a driver's previous accidents is inadmissible in a civil action arising out of a motor vehicle accident, since such

evidence is immaterial in the determination of the driver's negligence on the occasion in question."

American Law Institute, Model Code of Evidence, ch 4, Rule 306, pp 184, 185:

"Evidence concerning a person's character as tending to prove his conduct.  *  *  *

"Evidence of a trait of a person's character with respect to care or skill or the lack of either or both is inadmissible as tending to prove the quality of his conduct on a specified occasion."

Handbook of the National Conference of Commissioners on Uniform State Laws (1953), Uniform Rules of Evidence, Rule 48, p 191:

*"Character Trait for Care or Skill—Inadmissible to Prove Quality of Conduct.* Evidence of a trait of a person's character with respect to care or skill is inadmissible as tending to prove the quality of his conduct on a specified occasion."

20 ALR2d 1217, under annotation "Cross-examination of automobile driver in civil action with respect to arrest or conviction for previous traffic offenses":

"Generally speaking, the courts have refused to permit the cross-examination of a driver in civil actions as to prior arrests or convictions for traffic offenses on the ground that the introduction of such evidence would lead to a consideration of collateral issues having no bearing on the question of the driver's negligence in the accident under consideration."

4 Callaghan's Michigan Pleading and Practice (2d ed, 1964), § 36.269, pp 187, 188:

"For the purpose of establishing negligence on the part of the operator of a machine or the driver of a vehicle, it may be shown that he was incompetent or that he was reckless as regards his operation or driving at the time of the injury, and, in a case where

the operator or driver was an employee of the defendant and for the purpose of establishing negligence of the latter in retaining such employee, it may be shown that the defendant knew or must have known that his employee was incompetent.

"Generally, evidence is inadmissible as to particular instances of incompetency or recklessness on other occasions, as to a person's general character or reputation with respect to being incompetent or reckless, or as to his general method of driving, for the purpose of establishing negligence at the time of an accident."

1 Jones on Evidence (5th ed), § 190, p 331:

"The rule excluding evidence of character or reputation to prove conduct, applies with special force in negligence cases."

What this writer considers to be the policy behind holding such evidence inadmissible is well summarized by McCormick in a discussion in his work on Evidence, ch 16, § 152, p 319, as follows:

"The danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy;  *   *   *   the probability that the proof and the answering evidence that it provokes may create a side-issue that will unduly distract the jury from the main issues;  *   *   *   the likelihood that the evidence offered and the counter-proof will consume an undue amount of time" (and other considerations not relevant here).

These considerations have been summarized in the comment under Rule 303, p 181, in American Law Institute, Model Code of Evidence, as follows:

"(1) The time to be consumed may be out of all proportion to the value of the evidence; (2) the contest over the existence or nonexistence of [the offered evidence] may mislead the jury into believing it an issue of major importance; (3) the evidence as

to the existence or nonexistenec of [the offered fact] may present such a number of subordinate issues as to confuse the jury."

Or, as Wigmore puts it, "disputes over other carelessness would soon obscure the main issue." 1 Wigmore on Evidence (3d ed), § 199, p 678.

Why, then, if there is no need to establish negligent entrustment in order to hold the owner liable, does the plaintiff in the present case seek to expend the time, effort and money involved in obtaining and introducing proof to establish this liability link already admitted to exist because of statute?

Is it that proof of yesterday's accidents will be helpful to determine today's responsibilities, as claimed in plaintiff's supplemental brief:

"What she (plaintiff) is requesting, however, is that the court recognize that certain persons have a tendency toward negligent driving as evidenced by their previous driving history, and that a long current history of accidents or convictions does have a direct bearing not only upon the likelihood that a person was negligent in a given situation, but also upon the degree of care which a particular driver ought to exercise under the circumstances."

Is it because the amount of plaintiff's verdict would be enlarged by showing the proof of the driver's previous negligence, thus meeting a jury's reluctance to render a large verdict against the owner without such proof (plaintiff's supplemental brief)?

Or, is the answer to be found in the opinion to which I dissent, where the thought is expressed that placing such responsibility for added damages and accountability upon the owner, would awaken him to the fact that "his (owner's) personal, distinguished from vicarious, toes have been exposed to the heavy bootstep of liability"?

Plaintiff's request in the instant case differs from plaintiff's request in *Elliott* where the plaintiff only sued the owner. The fact that the driver was not a party to the suit was not only emphasized in *Elliott,* but the necessity of protecting the driver from prejudice was also emphasized.

Plaintiff's claim that defendant-driver would be protected from prejudicial harm by a court instruction that the driver's past record could only be considered by the jury as against the owner was answered in the dissent in our original decision (369 Mich 242, 249) as follows: "Such an instruction would not accomplish the purpose appellant claims for it, namely, insuring that the jury will not 'consider the past record of the driver' as 'bearing upon his negligence in this particular accident.' "

The protection of the driver against prejudice is not considered of importance in the opinion to which I dissent, and the following statement therein seems to prove that point: "The common-law rule of negligent entrustment is both time tried and valuable, and we are not disposed to dilute its worth on assigned ground that the sad proof of junior's record of court-conviction and parental knowledge thereof will 'prejudice the entrustor and the entrustee before the jury.' " I disagree with such a conclusion.

I re-emphasize what was said in the dissenting opinion (p 251) in the original case in re the uncertainty of the word "involved" and the confusion that will result if plaintiff is granted what she seeks, and what my Brother's opinion grants, namely: The right to prove that defendant driver "had been involved in prior accidents."

I quote with approval the following from the trial court's denial of the motion:

"I am usually of the opinion that a motion such as this, to amend the pleadings should be granted,

providing it does not prejudice the rights of defendant, even though the case is at issue, and pretrial has been held. It appears that any amendment at this stage of the proceedings would usually permit opposing counsel to adequately prepare to meet the amended pleading. However, in this case, the purpose of the proposed amendment appears to be solely that of introducing a driving record which would influence the jurors' decision in connection with the alleged negligence of defendant driver. [CLS 1961, § 257.731 (Stat Ann 1960 Rev § 9.2431)], specifically provides that no evidence of the conviction of a driver for a violation under that chapter or of a local ordinance shall be admissible in any court in a civil action.

"The proposed amendment goes only to the liability of defendant-owner who will be liable as owner if defendant-driver was negligent in the operation of his automobile. It appears, therefore, that the sole purpose of the proposed amendment is only to bring in the driving record of defendant-driver and thereby influence the jury. Since defendant has admitted that the car was being driven with the knowledge and consent of defendant-owner, the defendant-owner will be liable if defendant-driver is negligent."

I have written at length in this dissent because I believe a reversal of the trial court would lead to confusion and injustice and create a precedent shared by no State of this Union.

The order should be affirmed. Costs to appellees.

DETHMERS, J., concurred with KELLY, J.

O'HARA, J. (*dissenting in part*). I am impelled to write separately in this case because certain of the language in Mr. Justice BLACK's logically developed opinion is inconsonant with my conclusions. To sign only as "concurring in the result" is to me, not only in this case but in all cases presenting the same problem, a disservice to the writing Justice and

valueless to the circuit bench, to the bar, and, through them, to the parties litigant. Unless we who are not in complete accord with a given opinion specify our reasons, we leave nothing to which those who would urge a change in our case law, in cases of a divided court, can refer with particularity.

First: I agree that the opinions in this case and *Tortora* v. *General Motors Corporation,* 373 Mich 563, should be read and considered together, because this case really presents only a question of discretionary leave to amend a declaration (complaint). *Tortora* turns, in my view, upon a reversibly erroneous charge to the jury. However, both cases in their legal substance involve the application of the doctrine of negligent entrustment of a motor vehicle.

Second: I agree that we may consider a new legal issue "adequately briefed and presented" under proper circumstances, particularly as here where the case is supplementarily briefed and reheard.

I disagree with Mr. Justice Black when he says that this Court *"unequivocally* applied such [negligent entrustment] common-law rule to a motor car lender (*Tanis* v. *Eding,* 265 Mich 94); a full quarter century *after* [his emphasis] Michigan's owner-liability statute had become effective." I do not so read *Tanis.* This Court, in my view, did not apply the statute "unequivocally." Actually the Court was careful to note that:

"Eding [the owner] was not liable, under CL 1929, § 4648, as owner of the car, because he had not received certificate of title."

Thus the case for me stands not for the proposition that Mr. Justice Black urges but for its converse. It stands, I believe, for the precise point which I urge herein. Negligent entrustment of a motor vehicle is available to an injured party in those cases where the owner for whatever reason is not

liable under the vicarious ownership statute and his responsibility for the acts of his entrustee become his responsibility *dehors* the statute.

In like manner and on the same basis I distinguish *Krausnick* v. *Haegg Roofing Co.*, 236 Iowa 985 (20 NW2d 432, 163 ALR 1413). To whatever purpose the editors of 163 ALR 1413 cite the case, the real point involved was based upon a difference in our statute and Iowa's and upon a point which we disposed of long since in *Moore* v. *Palmer*, 350 Mich 363, 394:

"We now reiterate. The Michigan owner liability act, CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9-.2101), is an enactment founded upon the police power of the State. Its obvious purpose is to make owners of automobiles liable for the *negligent acts* of those to whom they *entrust* their vehicles. Liability under the statute is not limited by the common-law tests applicable to the master-servant relationship. The fact that a common-law action under the master-servant doctrine preceded the statute (and still exists) does not create any exception from the terms of the statute in favor of employers as a class." (Emphasis supplied.)

The Iowa court carefully noted that "consent" under their statute meant consent for a specific purpose:

"If it [the automobile] was placed in the driver's possession for *a specific trip or purpose,* there is no liability of the owner under the statute if injury * * * results from negligent operation of the vehicle while being used *for a different and unauthorized purpose.* * * * We see no reason for holding *in the latter case* that the common-law rule of liability might not be invoked against the owner if he negligently placed the vehicle in the hands of a known incompetent." *Krausnick, supra,* 989. (Emphasis supplied.)

The dichotomy between Mr. Justice Black and myself occurs when he would allow the assertion of the common-law doctrine of negligent entrustment and the admissions of the proofs of incompetence incident thereto in cases where ownership and consent to operate under our statute are alleged and not denied. For in such a case we in truth do precisely what the trial judge said we do—allow the assertion of this ground of liability "solely to influence the jury." Thus I would leave unimpaired the doctrine of negligent entrustment of a motor vehicle in our State but I would restrict its use to those cases wherein liability of the owner is not already alleged and admitted by reason of the operation of our statute.

Thus plaintiffs in cases where the liability could be dual, *i.e.,* statutory and by reason of entrustment, are free to choose their basis of relating the acts of the driver to the owner. Defendants likewise cannot have their defense cake and eat it too. If they controvert by denial of ownership or consent and put a plaintiff to his proof, he may prove his case of liability by any proof of the driver's prior incompetence and his necessary scienter thereof.

Third: I would leave unimpaired the right of cross-examination *in any case* under the established rules of evidence, the right to cross-examination concerning prior *convictions* of "prohibitory traffic law or ordinance" subject to the trial court's supervision as to relevancy in point of time. I specifically reject the admission of evidence of "past accidents" or "accident proneness" for the obvious reason of their objectionable nature as relating to proximate cause, a necessary ingredient of total proof of tort liability, in a motor vehicle accident case. Thus and to this extent I agree with Mr. Justice Black that when our coequal coordinate legislative branch en-

acts "rules of practice and procedure which rules include * * * rules of evidence" which are at variance with what we have prescribed by rule within our constitutionally inviolate area of the judicial power, they are void. I join with Mr. Justice BLACK in his "advice to the bench and the bar" of our intent to consider without delay an amendment to GCR 1963, 507, along the lines he suggests in his footnote.

For the reasons I have here detailed, I would affirm the trial judge and his denial of the right to amend. I would remand for trial upon the issues pleaded to be admitted or denied consistent with the limitations herein set forth. Appellees may tax costs.